UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA DIXON,

                              Plaintiff,                         1:16-CV-1184
                                                                 (GTS/DEP)
v.

OFFICE OF THE NEW YORK STATE
COMPTROLLER; and STATE OF NEW
YORK,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

SUSSMAN & ASSOCIATES                            MICHAEL H. SUSSMAN, ESQ.
   Counsel for Plaintiff                        CHRISTOPHER D. WATKINS, ESQ.
1 Railroad Avenue
P.O. Box 1005
Goshen, NY 10924

O'CONNELL & ARONOWITZ                           MEREDITH H. SAVITT, ESQ.
   Counsel for Defendants
54 State Street
Albany, NY 12207

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Angela

Dixon ("Plaintiff") against the State of New York and the Office of the New York State

Comptroller ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for lack of

subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and/or for failure to state a claim

upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 9.)  For the

reasons set forth below, Defendants' motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (Dkt. No. 1 [Pl.'s Compl.].)

<u>Plaintiff's Professional Responsibilities as Deputy Comptroller</u>

Plaintiff is employed as one of fourteen Deputy Comptrollers for the State of New York in the Office of the New York State Comptroller ("OSC") in Albany, New York.  (*Id.*, ¶ 6.) Plaintiff has been employed as the Deputy Comptroller for Human Resources and Administration ("HR&A") since 2008.  (*Id.*, ¶ 7.)  Plaintiff currently has approximately 140 subordinates in the division that she runs and eight people who report directly to her.  (*Id.*, ¶ 8.) Plaintiff reports to Chief of Staff, Shawn Thompson.  (*Id.*, ¶ 9.)  Plaintiff oversees the Comptroller's budget, financial administration, human resources, facilities management and enterprise business analysis, and project management.  (*Id.*, ¶ 10.)  Plaintiff's division supports all other agency divisions, regardless of their funding source.  (*Id.*, ¶ 11.)  As a Deputy Comptroller, Plaintiff represents OSC management as Labor and Management Co-Chair of the New York State Public Employees Federation ("PEF") and the Civil Service Employees Association ("CSEA"), and represents the Common Retirement Fund as President of the 110 State Street Condominium Board.  (*Id.*, ¶ 12.)

<u>First Deputy Comptroller Peter Grannis</u>

On or about January 20, 2011, Peter Grannis became the First Deputy Comptroller.  (*Id.*, ¶ 13.)  In this capacity, Mr. Grannis became the closest advisor to New York State Comptroller, Thomas P. DiNapoli.  (*Id.*)  While Plaintiff has never reported directly to Mr. Grannis, Mr.

Grannis has increasingly intruded into Plaintiff's areas of responsibility, embarrassed her without

basis in public meetings, re-directed work from her division to others, and has caused leaders in

other divisions to circumvent her responsibilities and authority.  (*Id.*, ¶ 14.)  As a result, Plaintiff

has been adversely affected by the material diminution in her responsibilities and the increasing

marginalization of her talents, skills, and abilities.  (*Id.*, ¶ 15.)

<u>Mr. Grannis's Alleged Disparate Treatment of Plaintiff</u>

Furthermore, Mr. Grannis has reserved a particularly disrespectful tone when speaking to

and about Plaintiff.  (*Id.*, ¶ 18.)  Mr. Grannis does not treat similarly-situated Caucasian Deputy

Comptrollers in a like manner.  (*Id.*)  For example, Mr. Grannis directed that certain staffing

changes be made and implied that he would discuss these changes with Plaintiff.  (*Id.*, ¶19.)

Instead, despite Plaintiff's stated duties and responsibilities, Mr. Grannis conferred with

Caucasian managers and then dictated their conclusions to Plaintiff without consulting her.  (*Id.*,

¶ 20.)

In addition, Mr. Grannis oversaw a review of Plaintiff's division, which took more than

one year to conduct.  (*Id.*, ¶ 21.)  Initially, the review was focused on the agency's hiring

process; however, Defendants utilized substantial resources to expand the scope of the review

and, in late 2015, issued "recommendations" that were critical of Plaintiff based on the opinions

of Caucasian managers.  (*Id.*, ¶¶ 21-22.)  This occurred despite data and tangible examples that

Plaintiff and the Assistant Comptroller of HR&A presented to Mr. Grannis and to Shawn

Thompson contradicting and refuting the assertions made by the Caucasian managers.  (*Id.*, ¶

23.)  After Plaintiff opposed the recommendations as one-sided, Shawn Thompson hired a

previously used consultant–a Caucasian male–to "review the review." (*Id.*, ¶ 24.)  During the

consultant's review, he used leading questions to interview Plaintiff's colleagues, such as "can you tell me what problems you have with the division of [HR&A]?" (*Id.*) When Plaintiff opposed the recommendations as one-sided, the consultant told her to "use her charm" to change opinions in the office. (*Id.*)

<u>Plaintiff's Removal from the Strategic Planning Steering Committee</u>

Beginning in 2010, Plaintiff served as a member of the Comptroller's Executive staff and the Comptroller's Strategic Planning Steering Committee. (*Id.*, ¶ 25.) In 2014, the Comptroller's Assistant Comptroller for Strategic Planning, who reports to Mr. Grannis, was tasked with developing the agency's plan for the next four years. (*Id.*, ¶ 26.) Plaintiff asked Mr. Grannis whether she could continue to be a member of the group developing the agency's strategic plan. (*Id.*, ¶ 27.) Mr. Grannis assured Plaintiff that she would be part of this initiative. (*Id.*, ¶ 28.) As a result, Plaintiff informed the Assistant Comptroller for Strategic Planning that she had spoken with Mr. Grannis and that he supported her ongoing involvement in this initiative. (*Id.*, ¶ 29.) The Assistant Comptroller informed Plaintiff that he would keep her "in the loop" and invite her to relevant meetings. (*Id.*, ¶ 30.)

Thereafter, however, Mr. Grannis turned the strategic planning function over to an Executive Planning Committee, which consists of several Caucasian males and females. (*Id.*, ¶ 31.) The Assistant Comptroller informed Plaintiff that strategic planning was underway and that, although he had recommended to Mr. Grannis that Plaintiff be included, it was ultimately decided that she would not be. (*Id.*, ¶ 32.) The Assistant Comptroller told Plaintiff that he still valued her input but would solicit it informally as things moved forward. (*Id.*, ¶ 33.) The Assistant Comptroller further explained that, on several occasions, he had broached the subject

-4-

of formally involving Plaintiff in the Strategic Planning group with Mr. Grannis, but that Mr. Grannis did not support this idea. (*Id.*, ¶ 34.) Plaintiff's exclusion from the agency's Strategic Planning group diminished her role and effectiveness within the organization. (*Id.*, ¶ 35.)

Plaintiff's Removal from Non-Profit Initiatives

In 2010, Plaintiff worked with an OSC colleague to develop an initiative to highlight Comptroller DiNapoli's support of the non-profit sector, which highlighted its economic significance and championed programmatic and legislative changes to benefit it. (*Id.*, ¶ 37.) At that time, Plaintiff engaged in these activities with the full support of Comptroller DiNapoli. (*Id.*, ¶ 38.) However, shortly after Mr. Grannis began his employment at the OSC, he diminished Plaintiff's participation in the very initiatives that she had helped to create. (*Id.*, ¶ 39.) By 2015, Mr. Grannis eliminated Plaintiff's involvement in these initiatives altogether. (*Id.*) As a result, Mr. Grannis "closed off a professional track that was both professionally and personally rewarding" to Plaintiff. (*Id.*, ¶ 40.) Plaintiff appealed to Mr. Thompson regarding her removal from these initiatives but he refused to intervene on her behalf. (*Id.*, ¶ 41.)

The Agency's Delayed Budget Submission for Fiscal Year 2015-16

In anticipation of the agency's budget submission for fiscal year 2015-16, Plaintiff met early in the process with Comptroller DiNapoli to obtain direction for the agency's budget. (*Id.*, ¶ 48.) Following the Comptroller's direction, which was reinforced during a conversation between Plaintiff and Mr. Thompson, Plaintiff directed both the Assistant Comptroller for HR&A and the Finance Director to draft a budget submission that met the goals that Comptroller DiNapoli had identified. (*Id.*, ¶ 49.) Before submission of the budget, Plaintiff shared information with Mr. Grannis, who had intervened and asked for multiple variations and

different approaches to the budget submission.  (*Id.*, ¶ 51.)  Traditionally, the agency submits its budget on a schedule later than that of the executive agencies (i.e., the agencies that report directly to the Governor of New York); but the agency had never, in Plaintiff's experience, been so delayed in submitting its budget as it was in 2015.  (*Id.*, ¶ 52.)  Such a delay can bring public ridicule to the Office of the State Comptroller.  (*Id.*)

Recognizing the possibility of a delay, Plaintiff instructed those who reported directly to her to come into work during the holiday weekend that celebrates the birthday of Martin Luther King, Jr.  (*Id.*, ¶ 53.)  This was necessary in order to finalize the budget for the Division of the Budget before the Governor's Annual Presentation, which was scheduled days later.  (*Id.*)  Mr. Grannis never acknowledged his role in the unnecessarily late submission of the agency's budget.  (*Id.*, ¶ 54.)  Had Mr. Grannis supported Plaintiff and the finance staff in completing the budget consistent with the Comptroller's directive, the agency would not have ended up in the situation it experienced.  (*Id.*, ¶ 55.)

<u>Mr. Grannis's Attempts to Undermine Plaintiff and Her Position</u>

Routinely, Mr. Grannis has bypassed and overlooked Plaintiff's knowledge, skill, and abilities.  (*Id.*, ¶ 42.)  This has occurred while Plaintiff has been in meetings presenting information on the agency's budget.  (*Id.*, ¶ 43.)  Instead of soliciting guidance from Plaintiff on matters pertinent to her position, Mr. Grannis seeks guidance from Larry Appel, the Assistant Comptroller for Human Resources, who is a Caucasian male.  (*Id.*, ¶ 44.)  In fact, in 2015, Mr. Grannis directed his Assistant Comptroller, Kristee Lacobucci, to have Mr. Appel, who is Plaintiff's subordinate, to directly present material at a staff meeting attended by Deputy Comptrollers concerning the budget.  (*Id.*, ¶ 46.)

Plaintiff has raised Mr. Grannis's discriminatory and disrespectful behavior with both her immediate supervisor and Comptroller DiNapoli. (*Id.*, ¶ 56.) However, neither has intervened in an attempt to correct Mr. Grannis's behavior and allow Plaintiff to properly and fully discharge her duties and responsibilities. (*Id.*, ¶ 57.) Plaintiff's current work environment is replete with second-guessing, hostile interactions witnessed by others, and intrusions into her job functions. (*Id.*, ¶ 58.) This hostile environment has made it impossible for Plaintiff to properly discharge her duties because she is in a constant state of stress in anticipation of the next attack by Mr. Grannis. (*Id.*) Further diminishing Plaintiff is the fact that many of her subordinates have witnessed the unwarranted, inhumane, and discriminatory treatment. (*Id.*)

Although Mr. Grannis is principally responsible for the hostile nature of Plaintiff's work environment, Comptroller DiNapoli is aware of the impact of Mr. Grannis's conduct and has failed to intervene. (*Id.*, ¶ 59.) Defendants have substantially stripped Plaintiff of critical job duties and have reassigned those duties to Caucasians, thereby marginalizing and devaluing Plaintiff while adversely affecting her future employment opportunities. (*Id.*, ¶ 60.) The course of conduct outlined above has intentionally minimized the contributions of one of the highest-ranking African-Americans employed by the OSC and provided enhanced responsibilities to Caucasian employees who lack Plaintiff's experience and/or skill. (*Id.*, ¶ 61.)

Based upon the foregoing allegations, Plaintiff alleges that Defendants have violated 42 U.S.C. § 2000e-5, *et seq.*, by adversely altering the terms and conditions of her employment on the basis of her race. (*Id.*, ¶ 65.)

## B.     The Parties' Briefing on Defendants' Motion

### 1.     Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert five arguments.  (Dkt. No. 9,

Attach. 1 [Defs.' Mem. of Law].)

First, Defendants argue that many of Plaintiff's claims should be dismissed for lack of

subject-matter jurisdiction because they are time-barred by the applicable statute of limitations.

(*Id.*, at 16.)[1]  Specifically, Defendants argue that Title VII requires a plaintiff to file a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days

of the acts complained of and that only the acts that occurred within the 300-day time period

preceding the filing may form the basis of a complaint.  (*Id.* at 16-17.)  In the present case,

Defendants argue that Plaintiff filed her charge of discrimination with the EEOC on November

4, 2015, and, therefore, all claims arising before January 8, 2015, are untimely.  (*Id.* at 17.)

Defendants argue that the following three claims that were alleged in the Complaint are

untimely: (1) Plaintiff's claim arising from her alleged removal from the not-for profit initiative,

which she alleges occurred shortly after Mr. Grannis arrived at OSC in 2011 or, at the very

latest, by 2015; (2) Plaintiff's claim arising from her alleged removal from the Strategic Planning

Committee, which she alleges occurred in 2014; and (3) Plaintiff's claim arising from her

allegations regarding the year-long review and the consultant's report.  (*Id.*)

With respect to the allegations giving rise to the remaining claims in the Complaint,

Defendants argue that only two other allegations have dates associated with them, which include

_____

[1]          Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the parties' respective motion papers.

Plaintiff's allegations related to (a) the preparation of the 2015-16 budget, and (b) the consultant's comment that she use her charm. (*Id.*) Defendants argue that these two incidents occurred months apart, i.e., the budget preparation occurred over the Martin Luther King, Jr., holiday in mid-January of 2015 and the charm comment was allegedly made in "late 2015." (*Id.*) Therefore, Defendants argue, these incidents are discrete acts that cannot be relied upon, pursuant to the continuing-violation doctrine, to make other untimely acts timely. (*Id.* at 17-18.) Furthermore, Defendants argue that these two incidents do not plausibly suggest that Plaintiff was discriminated against based on her race. (*Id.* at 18.)

Second, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a racial discrimination claim under Title VII. (*Id.* at 19.) Specifically, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting that she suffered an adverse employment action because, at most, her allegations amount to petty annoyances and perceived slights without any disciplinary action. (*Id.* at 20-21.)

Third, Defendants argue that Plaintiff's hostile work environment claim based on racial discrimination must be dismissed because she has failed to allege facts plausibly suggesting that (a) her workplace was severely permeated with discriminatory intimidation, ridicule, or insult, (b) any alleged harassment or improper conduct was sufficiently pervasive as opposed to episodic, (c) the conditions of her employment were altered, and (d) any alleged harassment or improper conduct was based on her race. (*Id.* at 21-29.)

Fourth, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim under 42 U.S.C. § 1983 because she (a) has not made any allegations that are separate from her claims under Title VII, and (b) has not named a "person" as a Defendant in this action. (*Id.* at 29-30.)

Fifth, and finally, Defendants argue that, because a Title VII claim can be brought against employers only, and because the OSC (and not the State of New York) is Plaintiff's employer, the State of New York should be dismissed from this action. (*Id.* at 30-31.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff asserts three arguments. (Dkt. No. 14 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that her claims are timely because she has alleged facts plausibly suggesting a single course of disparate treatment from 2011 through 2015. (*Id.* at 9.) Specifically, Plaintiff argues that she has alleged that her improper treatment began in 2011 when Mr. Grannis was appointed as First Deputy Comptroller and continued through the filing of her EEOC Charge in November of 2015. (*Id.* at 10.)

Second, Plaintiff argues that she has alleged facts plausibly suggesting that she suffered an adverse employment action because, unlike other cases where plaintiffs have failed to demonstrate adverse action after being subjected to "occasional nastiness" by their employers, Plaintiff has alleged that Mr. Grannis treated her in a demeaning manner that was markedly worse than the manner in which he treated her Caucasian peers. (*Id.* at 12.) Furthermore, Plaintiff argues that she has alleged that she was systematically stripped of duties and responsibilities while her authority was intentionally undermined. (*Id.*) Moreover, Plaintiff argues that she has alleged that her supervisor and Comptroller DiNapoli ratified Mr. Grannis's discriminatory treatment by not taking any action to stop it after she complained about his mistreatment. (*Id.*)

Third, and finally, Plaintiff argues that she has alleged facts plausibly suggesting discriminatory intent because she has alleged that she was treated less favorably than similarly situated Caucasian peers and subordinates. (*Id.* at 13.) In addition, Plaintiff argues that she has alleged that the reasons given for the actions taken against her, particularly for stripping her of her responsibilities and authority as Deputy Comptroller of HR&A, were pretextual and belied by the objective evidence. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendants assert three arguments. (Dkt. No. 15 [Defs.' Reply Mem. of Law].)

First, Defendants reiterate their argument that the continuing-violation doctrine is applied sparingly in the Second Circuit and that the circumstances in this case do not warrant its application. (*Id.* at 8.) In addition, Defendants reiterate their argument that Plaintiff has alleged that only two specific incidents occurred within the limitations period. (*Id.*) Defendants argue that these two incidents are unrelated discrete acts separated by approximately 10 months and do not plausibly suggest racial discrimination. (*Id.* at 8-9.) Therefore, Defendants argue that the continuing-violation doctrine is inapplicable. (*Id.*)

Second, Defendants reiterate their argument that Plaintiff has failed to allege facts plausibly suggesting that she suffered an adverse employment action because her allegations consist only of nebulous claims that Mr. Grannis, *inter alia*, ignored her and spoke to her in a disrespectful tone. (*Id.* at 11-12.) However, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting that she suffered any employment actions that materially diminished her job responsibilities. (*Id.* at 7, 12.)

Third, and finally, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting that anyone who treated her poorly at OSC did so because they possessed racial animus or a discriminatory intent. (*Id.* at 7-8, 12.) Specifically, Defendants acknowledge that Plaintiff need only allege facts that provide minimal support for the proposition that her employer was motivated by discriminatory intent. (*Id.* at 13.) However, Defendants argue that Plaintiff has merely alleged that she is African-American and Mr. Grannis and her colleagues are Caucasian, which, in and of itself, is insufficient to plausibly suggest that they harbored a discriminatory intent. (*Id.* at 13-14.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**B.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## III.    ANALYSIS

Because Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and

12(b)(6), the Court must first assess whether it has subject-matter jurisdiction over the claims

asserted in Plaintiff's Complaint.  *See Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 414-15

---

[2]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may nerveless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

(S.D.N.Y. 2012) ("When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action."). However, under the circumstances of this case, Defendants' motion to dismiss the Complaint for lack of subject-matter jurisdiction on the basis that Plaintiff's claims are time-barred is more appropriately reviewed under the standard governing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter."); *accord*, *Nghiem v. U.S. Dep't of Veteran Affairs*, 451 F. Supp. 2d 599, 602-03 (S.D.N.Y. 2006).[3] Therefore, the Court will review this portion of Defendants' motion under the Fed. R. Civ. P. 12(b)(6) standard.

A. **Whether Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memoranda of law. (Dkt. No. 9, Attach. 1, at 15-19

---

[3] There are circumstances under which a statute-of-limitations defense can deprive a court of subject-matter jurisdiction. *See*, *e.g.*, *Breland v. U.S.*, 10-CV-0007, 2011 WL 4345300, at *2 (N.D.N.Y. Sept. 15, 2011) (Suddaby, J.). However, those circumstances are not applicable in this case because Defendants' statute-of-limitations argument is based on the face of Plaintiffs' Complaint as well as documents attached to, incorporated by reference in, and/or integral to, it.

[Defs.' Mem. of Law]; Dkt. No. 15, at 6, 8-11 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)."  *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015) (internal quotation marks omitted).  "Under that provision, where the claimant has already filed the charge with a state or local equal employment agency, the claimant must bring the Title VII claim within 300 days of the alleged discriminatory action."  *Edner*, 134 F. Supp. 3d at 663 (internal quotation marks omitted).  "This 300-day time period acts as a statute of limitations and claims arising from acts that occurred more than 300 days prior to the employee's filing of a charge of discrimination with the EEOC are time-barred."  *Id.*

Here, Defendants argue, and Plaintiff does not dispute, that Plaintiff filed her charge of discrimination with the EEOC on November 4, 2015, and that, therefore, all of her claims arising before January 8, 2015, are untimely.  Instead, Plaintiff relies on the continuing-violation doctrine in support of her position that her claims are timely.  Pursuant to the continuing-violation doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Fouche v. St. Charles Hosp.*, 43 F. Supp. 3d 206, 213 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Thus, in other words, this exception applies for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination . . . so long as one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."

*Fouche*, 43 F. Supp. 3d at 213 (internal quotation marks omitted). "On the other hand, discrete acts do not fall within the exception and each discrete act starts a new clock for filing charges alleging that act." *Id.*

"As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 407 (E.D.N.Y. 2013) (internal quotation marks omitted), *aff'd*, 552 F. App'x 98 (2d Cir. 2014). Thus, only "compelling circumstances will warrant the application of the exception to the statute of limitations." *De La Peña*, 953 F. Supp. 2d at 407.

The Court agrees with Defendants that the majority of Plaintiff's allegations regarding discriminatory treatment that have particularized dates are untimely for the reasons stated in their memoranda of law. (Dkt. No. 9, Attach. 1, at 15-19 [Defs.' Mem. of Law]; Dkt. No. 15, at 6, 8-11 [Defs.' Reply Mem. of Law].)[4] Similarly, the Court agrees with Defendants that the two incidents that allegedly occurred within the limitations period (i.e., the incident related to the preparation of the 2015-16 fiscal year budget and the consultant's comment that Plaintiff should use her charm) are discrete acts that are alleged to have occurred approximately 10 months apart. (Dkt. No. 15, at 8-9 [Defs.' Reply Mem. of Law]; Dkt. No. 1, ¶¶ 24, 53 [Pl.'s Compl.].)[5] Therefore, Plaintiff cannot avail herself of the continuing-violation doctrine based on these two alleged incidents. Although the Court finds that Plaintiff's claims are time-barred, the Court would still dismiss those claims for failure to state a claim for the reasons set forth below.

---

[4]     The Court notes that it has considered the respective dates noted on the Consultant Report as well as the HR&A Division Review, attached as Exhibits B and C to Defendants' moving papers (Dkt. No. 9, Attachs. 4 and 5), as incorporated by reference in Plaintiff's Complaint. (Dkt. No. 1, ¶¶ 21-24 [Pl.'s Compl.].)

[5]     The Court takes judicial notice of the fact that, in 2015, the Martin Luther King, Jr., Holiday occurred on January 19th.

**B.** **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Claim Under Title VII for Racial Discrimination**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 9, Attach. 1, at 20-21 [Defs.' Mem. of Law]; Dkt. No. 15, at 5-8, 11-12 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff's "Title VII discrimination claim is governed by *McDonnell Douglas*." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19-20 (2d Cir. 2015) (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73-74 [2d Cir. 2015]). "Under the *McDonnell Douglas* framework, [the plaintiff] bears the burden of establishing a prima facie case of discrimination by showing (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (internal quotation marks omitted).  However, "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted).  Indeed, as concerns the fourth prong, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation."  *Vega*, 801 F.3d at 84 (internal quotation marks omitted). Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted).  Additionally, "the elements of a prima facie case may be used

as a prism to shed light upon the plausibility of the claim." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 n.9 (2d Cir. 2015) (internal quotation marks omitted); *accord, Vega*, 801 F.3d at 84 n.7.

1. **Whether Plaintiff Has Failed to Allege Facts Plausibly Suggesting Discriminatory Motivation**

Here, the Court agrees with Defendants, for the reasons stated in their reply memorandum of law (Dkt. No. 15, at 7-8 [Defs.' Reply Mem. of Law]), that, despite the lower burden required to demonstrate discriminatory motivation at the motion-to-dismiss stage, Plaintiff has failed to allege facts plausibly suggesting that she was allegedly mistreated *because of* her race. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristic."); *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 554 (W.D.N.Y. 2016) ("Plaintiff has failed to meet her pleading burden of supporting an inference of discriminatory intent, because her claims are not supported by anything other her own conclusory assertions that she was discriminated against on the basis of her race and national origin."); *Monachino v. Bair*, 769 F. Supp. 2d 431, 439 (S.D.N.Y. 2011) ("[Plaintiff] insists that he was singled out for unfair treatment. Yet he has not presented any evidence, such as discriminatory comments or disparate treatment of employees similarly situated to [plaintiff], from which a reasonable factfinder could conclude that the [employer's] actions were based on a protected characteristic."), *aff'd*, 481 F. App'x 20 (2d Cir. 2012); *Tekle v. Wegmans Food Mkts.*, 15-CV-6386, 2015 WL 8485273, at *3 (W.D.N.Y. Dec. 9, 2015) ("A complaint must do more than merely assert that racial discrimination occurred to survive a motion to dismiss.").

It is true that Plaintiff has alleged that she was treated less favorably than other Caucasian employees, which is one way to demonstrate discriminatory motivation. *See Mandell v. Cty. of*

*Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment–that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group–is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.") (internal quotation marks omitted). However, the Court finds that these allegations are general and/or conclusory and lack a factual basis that plausibly suggest that similarly situated Caucasian employees received favorable treatment. *See De La Peña*, 953 F. Supp. 2d at 413 (finding that plaintiff had failed to allege facts plausibly suggesting a causal relationship between his protected status and any adverse action where he merely alleged that he "was the only Filipino in the office and had experienced different forms of treatment than his coworkers"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing plaintiff's claim for race discrimination because she failed to plead discriminatory intent, because the complaint "lack[ed] any factual basis from which one could infer that any Caucasian employee similarly situated to Henry was subject to differential treatment," and the plaintiff's "generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to nudge [ ][her] claims across the line from conceivable to plausible") (alterations in original); *Bhanusali v. Orange Reg'l Med. Ctr.*, 10-CV-6694, 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 12, 2013) (dismissing disparate treatment claim on the ground that "Plaintiffs' general allegations that misconduct by 'younger and/or white physicians' went without peer review or discipline . . . are wholly conclusory, do not specify the individuals involved or the nature of their alleged misconduct, and are thus insufficient to render plausible the inference of discriminatory intent"); *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) ("[A plaintiff's] mere subjective belief that he was discriminated against . . . does not sustain a . . . discrimination claim.") (internal quotation marks and citation omitted).

## 2. Whether, in any Event, Plaintiff Has Failed to Allege Facts Plausibly Suggesting that She Suffered an Adverse Employment Action

The Court agrees with Defendants, again for the reasons stated in their memoranda of law (Dkt. No. 9, Attach. 1, at 20-21 [Defs.' Mem. of Law]; Dkt. No. 15, at 5-6, 11-12 [Defs.' Reply Mem. of Law]), that Plaintiff has failed to allege facts plausibly suggesting that she suffered an adverse employment action. For purposes of a claim for discrimination under Title VII, "a plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" *Richardson v. N.Y.S. Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). To qualify as materially adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted). In other words, the action must "result[ ] in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). "'Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Sethi v. Narod*, 12 F. Supp. 3d 505, 523 (E.D.N.Y.2014) (quoting *Feingold v. New York*, 366 F.3d 138, 152 [2d Cir. 2004]).

"There are no 'bright-line rules' as to what constitutes an adverse employment action, and Title VII 'does not define adverse employment action solely in terms of job termination or reduced wages and benefits[.]'" *Boza-Meade*, 170 F. Supp. 3d at 552 (quoting *Richardson*, 180 F.3d at 446). As a result, "courts must pore over each case to determine whether the challenged

employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

Here, Plaintiff remains employed as "one of the highest ranking African-Americans in the OSC[.]" (Dkt. No. 1, ¶ 61 [Pl.'s Compl.].)  Indeed, as Deputy Comptroller, Plaintiff is one of the highest-ranking employees in the OSC in general.  Not only is Plaintiff one of the only fourteen Deputy Comptrollers at the OSC, she has approximately 140 subordinates and oversees a wide-range of high level functions, including the budget, financial administration, human resources, facilities management and enterprise business analysis, and project management.  (*Id.*, ¶¶ 6, 8-10.)  Furthermore, Plaintiff co-chairs the PEF/CSEA Labor Management Committees and serves as President of the 110 State Street Condominium Board.  (*Id.*, ¶ 12.)  Importantly, Plaintiff does not allege in her Complaint that any of these responsibilities have diminished or have been stripped away, nor does she allege that she suffered a decrease in her salary or benefits, or was demoted.  (*See generally* Dkt. No. 1.)  Although Plaintiff alleges that she was removed from the Strategic Planning Committee, she fails to allege facts plausibly suggesting that her removal from this position was a material change to the terms and conditions of her employment as Deputy Comptroller.  (*Id.*)  Specifically, Plaintiff alleges that she began her position as a Deputy Comptroller in 2008 and later joined the Strategic Planning Committee in 2010.  (*Id.*, ¶¶ 7, 25.)  Notably, Plaintiff does not allege that she was placed on the Committee automatically when she was hired as a Deputy Comptroller because it was an inherent part of her job responsibilities in that position.  (*Id.*, ¶ 25.)  This plausibly suggests that Plaintiff was placed on the Committee based on merit and/or her desire to participate rather than by virtue of her position.

Similarly, Plaintiff alleges that she developed non-profit initiatives to benefit Comptroller DiNapoli in 2010 but was later prevented from participating in these initiatives by Mr. Grannis. (*Id.*, ¶¶ 37-39.)  While this was likely disappointing to Plaintiff, she has failed to allege that her participation in these initiatives was required by her position as Deputy Comptroller.  (*Id.*, ¶ 37.) In other words, Plaintiff has failed to allege facts plausibly suggesting that her removal from these initiatives constituted a material change in the terms and conditions of her employment as Deputy Comptroller.

With respect to Plaintiff's remaining allegations regarding her alleged treatment by Mr. Grannis, the Court agrees with Defendants that they do not plausibly suggest that she suffered an adverse employment action.  *See Thomson v. Odyssey House*, 652 F. App'x 44, 46 (2d Cir. 2016) ("[E]xcessive scrutiny is not an actionable adverse employment action."); *Boza-Meade*, 170 F. Supp. 3d at 553 ("Plaintiff's allegations relating to criticism of her work, comments made by her coworkers, requests to help with other employees' work on occasion, not having enough work, and generalized allegations that she was asked to complete 'new tasks,' do not rise to the level of an adverse employment action."); *Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014) ("A thin-skinned worker's reaction to criticism by a supervisor will not support a claim of . . . discrimination unless it is outside the bounds of appropriate supervision[.]"); *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 376 (E.D.N.Y. 2013) ("[A] 'bruised ego,' a 'demotion without change in pay, benefits, duties, or prestige,' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or material adverse employment action."); *Forkkio v. Powell*, 306 F.3d 1127, 1130-32 (D.C. Cir. 2002) (concluding that neither a reassignment depriving plaintiff of prestige nor a supervisor's alleged undermining

of plaintiff's authority rises to the level of an adverse employment action where plaintiff's pay increased, benefits were unchanged, and job responsibilities did not change significantly).

> **C.**      **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Hostile-Work-Environment Clam**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 9, Attach. 1, at 21-29 [Defs.' Mem. of Law].) To those reasons, the Court adds the following point.

A plaintiff pursuing a hostile-work-environment claim must "plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive–that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race or nationality].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Here, the Court finds that Plaintiff has not alleged facts plausibly suggesting a hostile work environment based on her race for the reasons discussed above in Part III.B.1. of this Decision and Order. *See Parra v. City of White Plains*, 48 F. Supp. 3d 542, 552 (S.D.N.Y. 2014) ("[P]laintiff's race-based hostile work environment claims are not plausibly pleaded because plaintiff offers little if any reason to believe defendants' actions had anything to do with her race."); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) ("When a person only makes general allegations that African-Americans are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim.").

> **D.**      **Whether Plaintiff's Claim Under 42 U.S.C. § 1983 Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 9, Attach. 1, at 29-

30 [Defs.' Mem. of Law].)  To those reasons, the Court notes that Plaintiff has failed to oppose this portion of Defendants' motion.  In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.[6]  The Court finds that, at the very least, Defendants have met that modest threshold burden with respect to their requested relief.  In any event, the Court would grant this portion of Defendants' motion even if it were to subject it to the more-rigorous scrutiny appropriate for a contested motion because the State of New York is not a "person" for purposes of § 1983 and Plaintiff has failed to assert any claims distinct from those arising under Title VII.  *See Caroselli v. Curci*, 371 F. App'x 199, 202 (2d Cir. 2010) ("With respect to the State of New York, a state is not a "person" amenable to suit under § 1983."); *Levesque v. New York*, 13-CV-0825, 2014 WL 4437629, at *4 (N.D.N.Y. Sept. 8, 2014) (McAvoy, J.) ("The United States Supreme Court has held that the States, and their agencies, are not 'persons' within the meaning of Section 1983.") (citing *Will v. Michigan Dep't of the State Police*, 491 U.S. 58, 71 [1989]); *Villar v. City of New York*, 135 F. Supp. 3d 105, 140 (S.D.N.Y. 2015) ("Although a § 1983 action may not be brought to vindicate rights conferred only by a statute that contains its own enforcement structure, such as Title VII, a Title VII plaintiff may bring a concurrent § 1983 claim if some law other than Title VII is the source of the right alleged to have been denied.") (internal quotation marks omitted).

---

[6]        *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**E. Whether Plaintiff Has Failed to State a Claim Against the State of New York**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 9, Attach. 1, at 30-31 [Defs.' Mem. of Law].) To those reasons, the Court notes, once again, that Plaintiff has failed to oppose this portion of Defendants' motion. In any event, the Court would grant this portion of Defendants' motion even if it were to subject it to the more-rigorous scrutiny appropriate for a contested motion because Defendants correctly argue that Plaintiff has alleged that the Office of the Comptroller, and not the State of New York, is her employer. Accordingly, because a Title VII claim can be brought only against employers, Plaintiff's Title VII claim against the State of New York must be dismissed.

**F. Whether Plaintiff Should Be *Sua Sponte* Permitted Leave to File and Serve an Amended Complaint**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

As an initial matter, the Court finds that any amendment to Plaintiff's pleadings would be futile because, for the reasons discussed above in Part III.A. of this Decision and Order, the Court has found that Plaintiff's claims are time-barred. In any event, Plaintiff has not filed a motion seeking leave to file and serve an amended complaint. Indeed, Plaintiff has not argued in her opposition memorandum of law that additional facts exist that would cure the defects in her pleadings if she were given an opportunity to amend her Complaint. Similarly, although there are undated incidents alleged in the Complaint, conspicuously absent from Plaintiff's opposition memorandum of law is any argument that these incidents would make Plaintiff's claims timely under the continuing-violation doctrine if she were given an opportunity to amend those

allegations to specify their dates of occurrence. Under these circumstances, the Court declines to *sua sponte* grant leave allowing Plaintiff to file and serve an amended complaint. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend a complaint] that was not made."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) ("Given that [the plaintiff] did not move for leave to replead in opposition to [the defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, *sua sponte*, leave to replead."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (finding that the district court "was under no obligation to provide [the plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*" where they neither requested leave to amend, nor indicated additional facts that might lead to a different result).

    **ACCORDINGLY,** it is

    **ORDERED** that Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief may be granted (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

    **ORDERED** that the Clerk of Court shall issue a judgment for Defendants and close this action.

Dated: September 29, 2017
       Syracuse, New York

                                    Hon. Glenn T. Suddaby
                                    Chief U.S. District Judge